

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES A. ZEIDLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 03 C 5063 |
| ) | |
| A & W RESTAURANTS, INC., ) | Wayne R. Andersen |
| ) | District Judge |
| Defendant. ) | |

## MEMORANDUM, OPINION AND ORDER

This matter is before the court on the defendant A&W Restaurants, Inc.'s ("A&W") motion for attorneys' fees. For the reasons explained below, A&W's motion [134] is granted.

## BACKGROUND

For a more detailed statement of the facts of this case, see this court's Memorandum, Opinion and Order entered on July 6, 2006. *See Zeidler v. A&W Restaurants,* WL 1898056 (N.D. Ill. July 6, 2006). On that date, after three years of litigation, this court granted A&W's motion for summary judgment and denied Plaintiff James Zeidler's ("Zeidler") motion for summary judgment. On appeal, the Seventh Circuit Court of Appeals affirmed this court's granting of summary judgment to A&W. *See Zeidler v. A&W Restaurants,* 2007 WL 528921 (7th Cir. Feb. 15, 2007). As the prevailing party, A&W now seeks to recover its attorneys' fees in the amount of $170,750.10 and costs of $4,839.55. Zeidler objects, asserting that the fees are unreasonably high.

# DISCUSSION

This dispute revolves around a franchise agreement entered into on July 9, 1996 between A&W and Zeidler. The Franchise Agreement includes an attorneys' fees provision, which specifically provides:

> If the Company prevails in any legal proceeding initiated by either the Company or the Licensee to construe or enforce the terms, conditions or provisions of this Agreement, including its termination provisions, or to obtain damages or other relief to which either may be entitled by virtue of this Agreement, the Licensee shall pay to the Company its attorneys' fees and costs, as well as its other related costs, including but not limited to the costs of travel, meals and lodging associated with the legal proceeding.

(Franchise Agreement, at §17.3). The Agreement was signed by both parties. However, Zeidler argues that there was not a meeting of minds even though he signed the Agreement. Zeidler explains that after he entered into the Agreement, the CEO of A&W stated that free-standing restaurants, similar to Zeidler's restaurant, were not viable. Zeidler contends that if he had known that freestanding restaurants were not viable, he would not have entered into the Franchise Agreement.

However, the factual record does not support Zeidler's contention. On November 27, 1996, prior to the construction of the restaurant, A&W sent him a letter stating that they had learned that a Dairy Queen was going to be opening next door to the restaurant. A&W explained that this development would increase competition and decrease the viability of the restaurant. A&W suggested that Zeidler not open his restaurant as it would likely be an unprofitable venture. A&W also offered to refund all money paid up to that point and cancel Zeidler's equipment order. A&W's letter, which was sent four months before the restaurant opened, urged Zeidler not to open the restaurant because it would not be viable. Regardless of A&W's warning, Zeidler opened the restaurant anyway.

2

Moreover, the CEO of A&W's remarks occurred six years after the restaurant was opened. Zeidler points to no other remark that was made prior to the entering of the agreement that was fraudulent. Zeidler's opening of the restaurant, despite A&W's strong warnings that the restaurant would not be viable, shows that he was not coerced into the Franchise Agreement and that there was a meeting of the minds at the time he signed the Franchise Agreement. Thus, section 17.3 of the Franchise Agreement is enforceable.

A&W has clearly prevailed in this legal proceeding. Illinois courts have previously held that when parties enter into a contract in which the prevailing party would be awarded attorneys' fees, a party has prevailed when "he is successful on any significant issue in the action." *Grossinger Motorcorp, Inc. v. American National Bank and Trust Co.*, 240 Ill.App.3d 737, 753 (1992). This court has awarded A&W summary judgment on all counts. *See Zeidler v. A&W Restaurants*, WL 1898056 (N.D. Ill. July 6, 2006). Zeidler submitted a motion to reconsider, which this court also denied. There is no possibility of future litigation in the district court, and A&W is the prevailing party. As such, A&W is entitled to reasonable attorneys' fees.

As the United States Supreme Court stated in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433. The product of these two factors is used to calculate an award of attorneys' fees. *Id.* In this case, counsel for A&W submitted extensive documentation outlining the number of hours expended on the litigation and the hourly rate charged by their attorneys. Four hundred forty-four of the 475 hours billed are for the work of a single attorney, partner Norman Leon. *Id.* Thus, the vast majority of A&W's representation was conducted by a single attorney.

3

Based on the record submitted, the court concludes that the attorneys' fees sought by A&W are reasonable. As the Seventh Circuit stated in *Gusman v. Unisys Corporation*, 986 F.2d 1146 (7th Cir. 1993) that a reasonable fee "should approximate the market rate in the relevant community." 986 F.2d at 1149. Over the course of the three-year litigation, attorney Leon billed from $337.50 to $414.00 per hour, each year increasing his hourly fee slightly. A&W attached a sample of attorneys' billing rates from across the country to their motion for attorneys' fees. *See Firm-by-Firm Sampling of Billing Rates Nationwide*, 28 NAT. L. J. 15 (Dec. 12, 2005). Depending on the size of the law firm, partners in Chicago billed anywhere from $200 to $800 an hour. *Id.* Attorney Leon's fee fits within the lower range of fees charged by partners in Chicago and this is reasonable.

A&W's payment of its attorneys' fees also supports their reasonableness. In *Medcom Pharmaceutical Company v. Baxter Travenol Labs, Inc.*, 200 F.3d 518 (7th Cir. 1996) the court stated that reasonableness also is indicated when a party "paid all of [its] bills at a time when its ultimate recovery was uncertain." 200 F. 3d at 521. The record shows that A&W voluntarily paid all fees in this matter before any ruling on summary judgment.

As noted in this court's Memorandum, Opinion and Order on the parties' motion for summary judgment, Zeidler's brother similarly was involved in a Franchise Agreement with A&W, filing suit for breach of that agreement. *See Russell Zeidler v. A&W Restaurants, Inc.*, 301 F.3d 572 (7th Cir. 2002); 2001 WL 62571 (N.D. Ill. Jan. 25, 2001). Zeidler's brother also lost on summary judgment, and A&W filed a similar motion for attorneys' fees. *See Russell Zeidler v. A&W Restaurants, Inc.*, 2001 WL 561367 (N.D. Ill. May 21, 2001). In that case, A&W prevailed and the court awarded $150,000 in attorneys' fees. *Id.* Because attorneys' fees were awarded in his brother's case, Zeidler was on notice that attorneys' fees could be awarded

to A&W in his case if he did not prevail in the suit. Zeidler was also aware that each motion that he filed would be responded to by A&W, increasing the amount of fees that A&W's attorneys would charge. Thus, Zeidler was aware that his flurry of motions would increase the amount of fees he would be liable for if he were to lose. Zeidler failed to heed the lessons from his brother and filed the motions anyway, causing A&W to incur greater legal expense in defending against them.

This case should be distinguished from Zeidler's brother's case in one respect. In Zeidler's brother's case, A&W initially requested $248,465.80 in fees, but Judge Kennelly reduced the award of attorneys' fees to $150,000 because he determined that the amount of time spent on certain projects was excessive. That is not the case here. A&W mostly utilized the services of one attorney during the course of the litigation with James Zeidler. In Russell Zeidler's case, A&W utilized the services of two partners and three associate lawyers, who billed 1,063.5 hours. Each attorney in that case billed approximately the same number of hours, with partners and associates doing similar work for similar periods of time.

In contrast, A&W mostly utilized the services of one attorney in this case. Although attorney Leon was a partner, his fees were at the lower end of the hourly market rate for partners in Chicago. Leon spent most of his time responding to motions filed by Zeidler. In fact, because Attorney Leon knew the details of the case better than any other attorney, it would have cost A&W more for him to bring an associate up to speed in order to complete these tasks. Thus, by relying almost exclusively on one attorney counsel for A&W did not incur excessive fees. Moreover, there is also no indication that A&W's attorneys engaged in any excessive projects, and A&W willingly paid the fees.

Finally, the costs incurred by A&W also are reasonable. Over the course of three years, attorneys for A&W expended only $4,839.55 in costs. These expenses include online legal research, transcripts of hearings and depositions, travel costs, a witness fee and a process server fee. Given the length of the litigation, these costs are entirely reasonable.

## CONCLUSION

For the foregoing reasons, A&W's motion for attorneys' fees and costs [134] is granted. This court awards $170,750.10 in attorneys' fees and $4,839.55 in costs. This is a final and appealable order.

It is so ordered.

*W. - C.*

Wayne R. Andersen
United States District Judge

Dated: *March 5, 2007*